**Steven R. Simon, Esq.**
**State Bar No. 016022**
**THE LAW FIRM OF ST. ERASTUS**
**2266 S. Dobson Road Ste. 200**
**Mesa, Arizona 85202**
**Phone: (480) 772-6504**
**Email:  simon@sterastus.org**
**Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angélica M. Loreto,<br><br>                              Plaintiff,<br><br>vs.<br><br>Arizona Board of Regents d/b/a University of Arizona; and Business Manager Denise Moynihan in her personal and official capacities,<br><br>                              Defendants. | No. CV-22-00269-TUC-JAS(AMM)<br><br>SECOND AMENDED COMPLAINT |

COMES NOW the Plaintiff, by and through her counsel undersigned, and for her Second Amended Complaint against Defendants, alleges as follows:

1.      Plaintiff Angélica Loreto (LORETO), B.A. M.S., Ph.D. candidate, is an employee of Defendant Arizona Board of Regents d/b/a University of Arizona (UofA).

2.      Defendant UofA is a public entity of the state of Arizona and its officers, agents and employees are state actors.

3.      Defendant UofA is a federal contractor and a federal grant recipient.

4.      Defendant Business Manager Denise Moynihan (MOYNIHAN) is a supervisory employee of Defendant UofA and as such is a state actor.

5.      LORETO started her employment with UofA in December 2006 as an Office Specialist.

6.      In June of 2115 LORETO was promoted to Accounting Assistant in the Business Department where Defendant MOYNIHAN became her supervisor.

7.      Throughout the relevant period MOYNIHAN imposed a restroom break pre-approval policy for LORETO'S Accounting Assistant position ostensibly to provide customer service at a walk-up account window.

8.      Pursuant to the restroom break pre-approval process, LORETO was required to call MOYNIHAN and receive verbal approval before leaving her workstation to go to the restroom.

9.      In March of 2020, UofA's Business Office stopped in person service due to the covid-19 pandemic and remained closed throughout the relevant period.

10.     MOYNIHAN continued to enforce her restroom break pre-approval policy on LORETO after the Business Office closed even though there was no reason to do so in the absence of any in person service requirement due to the covid closure.

11.     In February 2021, LORETO had a tummy tuck surgery and during the recovery process suffered severe incontinence and persistent involuntary lymphatic fluid pubic drainage, and as such was disabled within the meaning of the Arizona

Civil Rights Act, the Rehabilitation Act, and the Americans with Disabilities Act (ADA).

12.    LORETO informed MOYNIHAN about her surgery and the incontinence and lymphatic discharge disabilities associated with the recovery process and requested a reasonable accommodation in the form of a temporary exemption from the restroom break pre-approval process, and permission to take short walks to facilitate the post-surgical healing process.

13.    LORETO'S request for a reasonable accommodation was protected activity under the Arizona Civil Rights Act, the Rehabilitation Act, and the ADA.

14.    MOYNIHAN denied Plaintiff LORETO'S request for a temporary exemption from the restroom break pre-approval policy and denied LORETO'S request for short walks, even though there was no need for the restroom break pre-approval policy due to covid closure, and although MOYNIHAN promised to provide prompt approval upon request, MOYNIHAN actively obstructed and delayed approval for LORETO'S restroom breaks.

15.    MOYNIHAN, acting with the supervisory authority that UofA granted her over LORETO, and knowing that LORETO suffered from severe incontinence and persistent lymphatic fluid pubic discharge, deliberately delayed approval of LORETO'S restroom break requests inflicting severe physical pain, inner turmoil, personal and professional embarrassment, diminished self-worth, diminished professional motivation, shame, guilt, humiliation, extreme stress, extreme anxiety,

mental anguish and extreme discomfort upon LORETO, causing LORETO to regularly urinate and discharge lymphatic fluid into LORETO'S post-surgical undergarment, and deliberately forcing LORETO to resign.

16.    MOYNIHAN'S actions as set forth above caused LORETO to suffer severe anxiety, migraine headaches, insomnia, anger, depression, significant weight gain, and post-traumatic stress disorder.

17.    MOYNIHAN'S conduct as described above was deliberate, extreme, outrageous, and in reckless disregard of the near certainty that such conduct would inflict severe emotional distress upon LORETO.

18.    By the conduct described above, MOYNIHAN intended to constructively discharge LORETO.

19.    MOYNIHAN'S conduct as described above was outside the outer perimeter of her supervisory authority as a state employee supervisor.

20.    MOYNHIAN'S conduct as described above was outside the scope of her employment as a state employee.

21.    LORETO used her chain of command and UofA's EEO processes to raise her concerns with MOYNIHAN'S restroom break pre-approval process and obstruction of her restroom breaks with MOYNIHAN'S supervisor, UofA Health Services Biocommunications Director Richard (Ricky) Bergeron (BERGERON), and UofA Human Resource Specialist Kevin L. Mack (MACK).

22.    BERGERON was well aware of MOYNIHAN'S restroom break pre-approval policy through multiple independent third-party complaints.

23.    BERGERON, acting under the supervisory authority UofA granted him over MOYNIHAN and LORETO, ratified MOYNIHAN'S abusive treatment of LORETO as described above and refused to remedy such treatment.

24.    By the conduct described above UofA and MOYNIHAN denied LORETO's requests for reasonable accommodation and deliberately obstructed LORETO's restroom breaks, inflicting severe physical pain, embarrassment, humiliation, and discomfort upon LORETO, causing LORETO to regularly urinate and discharge lymphatic fluid into LORETO'S undergarment and forced LORETO to resign.

25.    By the conduct described above UofA and MOYNIHAN inflicted severe emotional distress upon LORETO.

26.    By the conduct described above UofA and MOYNIHAN constructively discharged LORETO intentionally inflicting severe emotional distress upon LORETO through anxiety over loss of income to support her family and loss of valued professional employment.

27.    By the conduct described above UofA and MOYNIHAN retaliated against LORETO for her protected activity of requesting reasonable accommodation.

28.    By the conduct described above UofA and MOYNIHAN rendered LORETO'S working conditions intolerable, forcing LORETO to resign on April 30, 2021, and apply for unemployment compensation.

29.    UofA and MOYNIHAN continued to retaliate against LORETO for having requested a reasonable accommodation by contesting LORETO'S application for unemployment compensation.

30.    UofA and MOYNIHAN falsely represented to the Arizona Department of Economic Security that MOYNIHAN did not have a restroom break pre-approval policy and that LORETO had not requested a reasonable accommodation.

31.    MOYNIHAN provided perjurious testimony at LORETO'S September 26, 2021, unemployment compensation hearing falsely testifying that MOYNIHAN did not have a restroom break pre-approval policy and that LORETO had not requested a reasonable accommodation.

32.    BERGERON provided perjurious testimony at LORETO'S September 26, 2021, unemployment compensation hearing falsely testifying that MOYNIHAN did not have a restroom break pre-approval policy and that LORETO had not requested a reasonable accommodation.

33.    UofA's and MOYNIHAN's contestation of LORETO'S unemployment compensation claim and MOYNIHAN'S and BERGERON'S perjurious testimony extended and intensified LORETO'S emotional distress and physical symptomology as described above.

34.    LORETO'S emotional distress and physical symptomology as a result of UofA's and MOYNIHAN'S deliberate and reckless conduct as described above, continues to date and has permanently impacted LORETO physical health and emotional well-being.

35.    In November 2021 LORETO was able to rehire as an Accountant with the UofA's Bursar's Office.

36.    UofA continues to retaliate against LORETO for having requested a reasonable accommodation by billing LORETO for its attorneys fees.

37.    UofA's and MOYNIHAN'S retaliatory conduct as described above constitutes a continuing violation.

38.    LORETO exhausted her administrative remedies by timely filing complaints with the Arizona Attorney General's Office and the Equal Employment Opportunity Commission.

## FIRST CAUSE OF ACTION

## REPRISAL

LORETO incorporates by reference the allegations contained in paragraphs 1 through 38 as though fully set forth herein.

39.    UofA retaliated against LORETO for her protected activity of requesting reasonable accommodations, by contesting her application for unemployment compensation.

40.    By the conduct described above UofA retaliated against LORETO in violation of the ADA, Rehabilitation Act and the Arizona Civil Rights Act.

SECOND CAUSE OF ACTION

INTENTIONAL INFLICITION OF EMOTION DISTRESS

LORETO incorporates by reference the allegations contained in paragraphs 1 through 38 as though fully set forth herein.

41.    MOYNIHAN, acting outside the scope of her employment and beyond the outer perimeter of her supervisory authority, by the conduct described above, engaged in extreme and outrageous conduct intended to cause severe emotional distress and in reckless disregard of the near certainty that severe emotion distress would result from such conduct.

42.  Severe emotional distress as described above occurred as the result of MOYNIHAN'S conduct, and MOYNIHAN is answerable in her personal and official capacities for damages for such conduct under Arizona law.

43.    UofA, by investing MOYNIHAN and BERGERON with supervisory authority and by their conduct described above, engaged in extreme and outrageous conduct intended to cause severe emotional distress and in reckless disregard of the near certainty that severe emotion distress would result from such conduct.

44.    Severe emotional distress occurred as the result of UofA's conduct as described above, and UofA is answerable for equitable relief under Arizona law to redress such conduct.

PRAYER FOR RELIEF

WHEREFORE, LORETO prays for an award and relief against Defendants as follows:

1. Entry of declaratory judgment that Defendant UofA retaliated against LORETO in violation of the ADA, the Rehabilitation Act, and the Arizona Civil Rights Act.

2. Entry of a permanent injunction ordering UofA to stipulate to: [a] the reopening of LORETO'S unemployment compensation claim; [b] the withdrawal of UofA's controversion of LORETO'S unemployment compensation claim; and [c] the withdrawal of UofA's claims for attorneys fees associated with LORETO'S unemployment compensation claim.

3. Entry of a permanent injunction ordering UofA to correct LORETO'S employment records to place her back on the UofA payroll as an Accountant III for the period of April 30, 2021, through November 18, 2021, to restore all of LORETO'S pay and benefits for such period, and to provide career employment progression appropriate for such restoration of her employment during this period.

4. For compensatory and non-compensatory damages against UofA for its retaliation in a fair and equitable amount to be determined at trial.

5. For compensatory and non-compensatory damages against MOYNIHAN for her intentional infliction of emotional distress in a fair and equitable amount to be determined at trial.

6. For an award against UofA for LORETO'S attorneys' fees and costs incurred herein pursuant to the ADA, 42 U.S.C. § 12205, § 505 of the Rehabilitation Act 29 U.S.C. § 794a, and the Arizona Civil Rights Act, A.R.S. § 41-1481.J.

7. For such other and further relief as the Court may deem just and proper.

JURY TRIAL DEMAND:  Plaintiff LORETO hereby demands a trial by jury on all issues so triable pursuant to FRCP 38, the ADA, the Rehabilitation Act, and the Arizona Civil Rights Act.

DATED this 18th day of October 2023.

THE LAW FIRM OF ST. ERASTUS

*Steven R. Simon*

STEVEN R. SIMON

*Attorney for Plaintiff*